# Exhibit A



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 26, 2007

**VIA FACSIMILE (202-514-0163)**
Maureen Killion, Director
Office of Enforcement Operations
Criminal Division
United States Department of Justice
1301 New York Avenue, Suite 1200
Washington, D.C. 20005

> Re:   Request for Special Administrative Measures Confinement
> Restrictions on Federal Bureau of Prisons (BOP) Inmate Oussama
> Kassir (USMS Registration number 05151-748)

Dear Ms. Killion:

Pursuant to 28 C.F.R. § 501.3(c), I am hereby requesting that special administrative measures (SAM) confinement restrictions be imposed on Federal Bureau of Prisons inmate Oussama Kassir (Kassir) by the Attorney General.

As the United States Attorney for the Southern District of New York, I am hereby notifying the Attorney General that SAM, pursuant to 28 C.F.R. § 501.3, on Kassir are reasonably necessary to protect persons against the risk of death or serious bodily injury because I find that there is clear and convincing evidence of a substantial risk that Kassir's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.

Very truly yours,

MICHAEL J. GARCIA  DR/AJ
United States Attorney
Southern District of New York

LIMITED OFFICIAL USE

MEMORANDUM FOR HARLEY G. LAPPIN
                          DIRECTOR
                          FEDERAL BUREAU OF PRISONS

FROM:              Alice S. Fisher
                          Assistant Attorney General

SUBJECT:        Origination of Special Administrative Measures (SAM) Pursuant to
                          28 C.F.R. § 501.3 for Federal Prison Inmate Oussama Kassir

     Federal prison inmate Oussama Kassir (Kassir) is charged in twelve terrorism counts based on his participation in two different terrorist conspiracies. The charges relate to his participation in an effort to establish a jihad training camp in Bly, Oregon, and his operation of several terrorist websites. Kassir is currently housed at the Metropolitan Correctional Center in Manhattan (Registration number 05151-748), where he has been incarcerated since September 25, 2007 following his extradition from the Czech Republic. His case is currently pending before the Honorable John F. Keenan. A trial date has not yet been set.

     Oussama Kassir, also known as "Abu Abdullah" and "Abu Khadija," was a follower of radical Islamic cleric Abu Hamza al-Masri, who is charged as a co-defendant in the same case. The five Bly, Oregon jihad training camp charges relate to the efforts of Kassir, Abu Hamza, Haroon Aswat, and cooperating witness          to establish a jihad training camp on a parcel of property located in Bly, Oregon. Those counts primarily accuse Kassir of providing material support to terrorists and, in particular, the al Qaeda terrorist organization, for his activities in Bly. The purpose of the Bly jihad training camp was to provide a place where Muslims could receive various types of training, including military-style jihad training, and gain enough familiarity with weapons to fight jihad or to continue with additional jihad training in Afghanistan. In Bly, KASSIR told witnesses that he supported Usama Bin Laden and al Qaeda, and that he had previously undertaken jihad training in Afghanistan, Kashmir, and Lebanon. A witness also saw KASSIR in possession of a compact disc that contained instructions on how to make bombs and poisons. While at Bly, Kassir also threatened to kill James Ujaama and bury him on the property because there were too few men located at Bly for Kassir to train.

     In the terrorist website counts, Kassir is charged with developing and operating several websites which promoted terrorism and contained terrorist manuals, such as "The Mujahideen Explosives Handbook" and "The Mujahideen Poisons Handbook." Thus, seven of the counts accuse Kassir of operating terrorist websites on the internet. Those counts also include material support charges, and further allege violations of statutes which make it illegal to (1) provide assistance in the development, production, and use of chemical weapons, and (2) distribute information relating to explosives, destructive devices, and weapons of mass destruction.

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                    Page 2
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

<u>LIMITED OFFICIAL USE</u>

Kassir was arrested at the airport in the Czech Republic on December 11, 2005, based upon the charges filed in the Southern District of New York. He has been detained in the Czech Republic, pending extradition to the United States, since that date.

Based upon information provided to me of Kassir's proclivity for violence, I find that there is substantial risk that his communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons. **Therefore, I am requesting that you, pursuant to 28 C.F.R. § 501.3, implement SAM to restrict Kassir's access to the mail, the media, the telephone, and visitors.** This SAM will commence immediately upon notice to the inmate and will be in effect for one (1) year, subject to my further direction.

1.    **General Provisions:**

    a.    **Adherence to Usual United States Marshals Service (USMS), Bureau of Prisons (BOP) and Detention Facility (DF) Policy Requirements -** In addition to the below-listed SAM, the inmate must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc. If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM is more restrictive than usual USMS/BOP/DF policies, then the SAM shall control. If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

    b.    **Interim SAM Modification Authority -** During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify the inmate's SAM as long as any SAM modification authorized by OEO:

        i.    Does not create a more restrictive SAM;

        ii.    Is not in conflict with the request of the Counterterrorism Section (CTS/NSD), the U.S. Attorney for the Southern District of New York (USA/SDNY), Federal Bureau of Investigation (FBI), or USMS/BOP/DF, or applicable regulations; and

        iii.    Is not objected to by the CTS/NSD, USA/SDNY, FBI, or USMS/BOP/DF.

    c.    **Inmate Communications Prohibitions -** The inmate is limited, within USMS/BOP/DF's reasonable efforts and existing confinement conditions, from

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                    Page 3
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

LIMITED OFFICIAL USE

having contact (including passing or receiving any oral, written or recorded communications) with any other inmate, visitor, attorney, or anyone else except as outlined and allowed by this document that could reasonably foreseeably result in the inmate communicating information (sending or receiving) that could circumvent the SAM's intent of significantly limiting the inmate's ability to communicate (send or receive) information relating to terrorist information.

d.   **Use of Interpreters/Translators by USMS/BOP/DF** - Translator approval requirement:

    i.   USMS/BOP/DF may use Department of Justice (DOJ)-approved translators as necessary for the purpose of facilitating communication with the inmate.

    ii.  No person shall act as a translator without prior written clearance/approval from USMS/BOP/DF, which shall only be granted after consultation with the FBI and USA/SDNY.

    iii. Translators utilized by USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with the inmate. Translators shall not be alone with the inmate, either in a room or on a telephone or other communications medium.

2.   **Attorney/Client Provisions:**

a.   **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document -** The inmate's attorney (or counsel) – individually by each if more than one (1) – must sign an affirmation acknowledging receipt of the SAM restrictions document. By signing the affirmation, the attorney acknowledges his/her awareness and understanding of the SAM provisions and his/her agreement to abide by these provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth

---

[1] The term "attorney" refers to the inmate's attorney of record, who has been verified and documented by the USA/SDNY, and who has received and acknowledged receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one (1) attorney where the inmate is represented by two (2) or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his/her individual capacity.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                      Page 4
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir
<u>LIMITED OFFICIAL USE</u>

in the conclusions supporting the SAM. However, in signing the affirmation, the inmate's attorney, and pre-cleared staff, acknowledge the restriction that they will not forward third-party messages to or from the inmate.

  i.    The USA/SDNY shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to the inmate's attorney.

  ii.   After initiation of SAM and prior to the inmate's attorney being permitted to have attorney/client-privileged contact with the inmate, the inmate's attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/SDNY.

  iii.  The USA/SDNY shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to the Office of Enforcement Operations (OEO) in Washington, DC and the USMS/BOP/DF.

  b.  **Attorney Use of Interpreters/Translators -**

  i.    Necessity Requirement - No interpreter/translator (translator) shall be utilized unless absolutely necessary where the inmate does not speak a  common language with the attorney. Any translator shall be precleared.[2]

  ii.   Attorney Immediate Presence Requirement - Any use of a translator by the attorney shall be in the physical and immediate presence of the attorney - in the same room. The attorney shall not patch through telephone calls, or any other communications, to or from the inmate.

  iii.  Translation of Inmate's Correspondence - An attorney of record may only allow a federally-approved translator to translate the inmate's correspondence as necessary for attorney/client privileged communication.

---

[2] "Precleared" refers to a translator, who is actively assisting the inmate's attorney with the inmate's defense, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his/her signature – to adhere to the SAM restrictions and requirements.

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                   Page 5
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

LIMITED OFFICIAL USE

c.    **Attorney/Client Privileged Visits -** May be contact or non-contact, at the discretion of the USMS/BOP/DF.

d.    **Attorney May Disseminate Inmate Conversations -** The inmate's attorney may disseminate the contents of the inmate's communication to third parties for the sole purpose of providing necessary legal services related to the preparation for trial – and not for any other reason – on the understanding that any such dissemination shall be made solely by the inmate's attorney, and not by the attorney's staff.

e.    **Unaccompanied Attorney's Pre-cleared Paralegal(s)[3] May Meet With Client -** The inmate's attorney's pre-cleared paralegal(s) may meet with the inmate without the necessity of the inmate's attorney being present. An investigator or translator may not meet alone with the inmate. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

f.    **Simultaneous Multiple Legal Visitors -** The inmate may have multiple legal visitors provided that at least one (1) of the multiple legal visitors consists of the inmate's attorney or pre-cleared paralegal. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

g.    **Legally Privileged Telephone Calls -** The following rules refer to all legally-privileged telephone calls or communications:

    i.    Inmate's Attorney's Pre-cleared Staff May Participate in Inmate Telephone Calls - The inmate's attorney's pre-cleared staff are permitted to communicate directly with the inmate by telephone, provided that the inmate's attorney is physically present and participating in the legal call as well.

---

[3] "Precleared" when used with regard to an attorney's staff, or "pre-cleared staff member," refers to a co-counsel, paralegal, or an investigator who is actively assisting the inmate's attorney with the inmate's defense, who has submitted a to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his/her signature – to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one (1) staff member, and the provisions of this document shall be fully applicable to each such staff member in his/her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                    Page 6
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

LIMITED OFFICIAL USE

ii.     Inmate's Initiation of Legally-Privileged Telephone Calls - Inmate-initiated telephone communications with his attorney or pre-cleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to the inmate only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is the inmate's attorney. This privilege is contingent upon the following additional restrictions:

(1)     The inmate's attorney will not allow any nonpre-cleared person to communicate with the inmate, or to take part in and/or listen to or overhear any communications with the inmate.

(2)     The inmate's attorney must instruct his/her staff that:

(a)     The inmate's attorney and pre-cleared staff are the only persons allowed to engage in communications with the inmate.

(b)     The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send the inmate's communications to third parties.

(3)     No telephone call/communication, or portion thereof, except as specifically authorized by this document:

(a)     Is to be overheard by a third party.[4]

(b)     Will be patched through, or in any manner forwarded or transmitted to a third party.

(c)     Shall be divulged in any manner to a third party, except as otherwise provided in Section 2d.

_____

[4] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when acting in connection with their official duties. This section does not allow monitoring of attorney/client- privileged communications.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                      Page 7
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

LIMITED OFFICIAL USE

      (d)    Shall be in any manner recorded or preserved.[5] The inmate's attorney may make written notes of attorney/client -privileged communications.

   (4)   If USMS/BOP/DF, FBI or USA/SDNY determines that the inmate has used or is using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, the inmate's ability to contact his attorney by telephone may be suspended or eliminated.

h.    **Documents Provided by Attorney to Inmate -** The inmate's attorney may provide his/her client with or review with the inmate, documents related to trial preparation so long as any of the foregoing documents are translated, if translation is necessary, by a pre-cleared translator. Any document not related to trial preparation must be sent to the inmate via general correspondence and will be subject to the mail provisions of subparagraphs 2i and 3g. Documents previously reviewed and cleared for receipt by the inmate, and already in the inmate's possession at the outset of the visit, may be discussed or reviewed by the inmate and the inmate's attorney during the visit.

      i.    None of the materials provided may include inflammatory materials, materials inciting to violence or military training materials, or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/SDNY and the FBI.

     ii.    The USA/SDNY may authorize additional documents to be presented to the inmate. If any document not listed or described above needs to be transmitted to the inmate, consent for the transmission of the document can be obtained from the USA/SDNY without the need to formally seek approval for an amendment to the SAM.

---

[5] Except by USMS/BOP/DF/FBI/DOJ or other duly authorized federal authorities. This section does not allow monitoring of attorney/client-privileged communications.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                    Page 8
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

<u>LIMITED OFFICIAL USE</u>

    i.    **Legal Mail -** The inmate's attorney may not send, communicate, distribute, or divulge the inmate's mail, or any portion of its contents (legal or otherwise), to third parties.[6]

        In signing the SAM acknowledgment document, the inmate's attorney and pre-cleared staff will acknowledge the restriction that only inmate case-related documents will be presented to the inmate, and that neither the attorney nor his/her staff will forward third-party mail to or from the inmate.

3.    **Inmate's Non-legal Contacts:**

    a.    **Non-legal Telephone Contacts -**

        i.    The inmate is limited to non-legal telephone calls with his immediate family members.[7]

        ii.    The quantity and duration of the inmate's non-legal telephone calls with his immediate family members shall be set by the USMS/BOP/DF, with a minimum of one (1) call per month, unless otherwise agreed upon by USMS/BOP/DF, FBI and USA/SDNY to allow more calls.

    b.    **Rules for Telephone Calls -** For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

        i.    Is to be overheard by a third party.[8]

---

    [6] Legal mail is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney of record. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

    [7] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF/FBI-verifiable) spouse, natural children, parents, and siblings.

    [8] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities when monitoring in connection with their official duties. This section does not allow monitoring of attorney/client communications.

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**           Page 9
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

LIMITED OFFICIAL USE

     ii.      Is to be patched through, or in any manner forwarded or transmitted, to a third party.

     iii.      Shall be divulged in any manner to a third party.

     iv.      Shall be in any manner recorded or preserved.[9]

     All telephone calls shall be in English unless a fluent FBI, USMS/BOP/DF- approved translator is available to contemporaneously monitor the telephone call. Arranging for a translator may require at least fourteen (14) days advance notice.

c.      **Telephone SAM Restriction Notifications -** For all non-legal telephone calls to the inmate's immediate family member(s):

     i.      USMS/BOP/DF shall inform the inmate of the telephone SAM restrictions prior to each telephone call.

     ii.      USMS/BOP/DF shall verbally inform the inmate's immediate family member(s) on the opposite end of the inmate's telephone communication of the telephone SAM. USMS/BOP/DF is only required to notify the inmate's communication recipient in English.

     iii.      USMS/BOP/DF shall document each such telephone notification.

d.      **Family Call Monitoring -** All calls with the inmate's immediate family member(s) shall be:

     i.      Contemporaneously monitored by the FBI.

     ii.      Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

     iii.      A copy of each inmate/immediate family member telephone call recording shall be provided by USMS/BOP/DF on a single, individual cassette tape (per

---

[9] Except by USMS/BOP/DF/FBI/DOJ, or other duly authorized federal authorities.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                Page 10
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

<u>LIMITED OFFICIAL USE</u>

call) for forwarding to the FBI. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

e.     **Improper Communications -** If telephone call monitoring or analysis reveals that any call or portion of a call involving the inmate contains any indication of a discussion of illegal activity, the soliciting of or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the inmate shall not be permitted any further calls to his immediate family members for a period of time to be determined by USMS/BOP/DF. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

f.     **Non-legal Visits -**

     I.     **Limited Visitors -** The inmate shall be permitted to visit only with his immediate family members. The visitor's identity and family member relationship to the inmate will be confirmed by the USMS/BOP/DF and FBI in advance.

     ii.     **English Requirement -** All communications during non-legal inmate visits will be in English unless a fluent FBI, USMS/BOP/DF-approved translator is readily available to contemporaneously monitor the communication/visit.

     iii.     **Visit Criteria -** All non-legal visits shall be:

         (1)     Contemporaneously monitored by USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

         (2)     Permitted only with a minimum of fourteen (14) calendar days advance written notice to the USMS/BOP/DF facility where the inmate is housed.

         (3)     Without any physical contact. All such meetings shall be non-contact to protect against harm to visitors or staff should the inmate attempt to take hostages.

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                    Page 11
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

LIMITED OFFICIAL USE

> (4)  Limited to one (1) adult visitor at a time.  However, FBI-verified children of the inmate may visit with a pre-approved adult visitor.

g.  **Non-legal Mail -** Any mail not clearly and properly addressed to/from the inmate's attorney and marked "Privileged" (incoming or outgoing):

I.  **Restricted** - Shall be limited to non-legal mail (incoming and outgoing) with his immediate family members.  The identity and family member relationship to the inmate will be confirmed by USMS/BOP/DF and FBI.

ii.  **Copied** - Shall be copied (including the surface of the envelope) by the warden, or his/her designee, of the facility in which the inmate is housed.

iii.  **Forwarded -** Shall be forwarded, in copy form, to the location designated by the FBI.

iv.  **Analyzed -** After government analysis and approval, if appropriate, the inmate's incoming/outgoing non-legal mail will be forwarded:  1) to the USMS/BOP/DF for delivery to the inmate (incoming); or 2) directly to the addressee (outgoing).

> (1)  The Federal Government will forward the inmate's non-legal mail to the USMS/BOP/DF for delivery to the inmate or directly to the addressee after a review and analysis period of:
>
>> (a)  A reasonable time not to exceed fourteen (14) business days for mail which is written entirely in the English language.
>>
>> (b)  A reasonable time not to exceed sixty (60) business days for any mail which includes writing in any language other than English, to allow for translation.
>>
>> (c)  A reasonable time not to exceed sixty (60) business days for any mail where the Federal Government has reasonable suspicion to believe that a code was used, to allow for decoding.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                    Page 12
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

LIMITED OFFICIAL USE

v.    **Mail Seizure -** If outgoing/incoming mail is determined by USMS/BOP/DF
or FBI to contain overt or covert discussions of or requests for illegal
activities, the soliciting or encouraging of acts of violence or terrorism, or
actual or attempted circumvention of the SAM, the mail shall not be
delivered/forwarded to the intended recipient but referred to the FBI for
appropriate action. The inmate shall be notified in writing of the seizure of
any mail.

4.    **Communication With News Media:**

The inmate will not be permitted to talk with, meet with, correspond with, or otherwise
communicate with any member, or representative, of the news media, in person, by telephone,
by furnishing a recorded message, through the mail, through his attorney, through a third
party, or otherwise.

5.    **No Group Prayer:**

a.    The inmate shall not be allowed to engage in group prayer with other inmates.

b.    If an FBI and/or USMS/BOP/DF approved religious representative is to be present for
prayer with the inmate, the prayer shall be conducted as part of a contact or non-
contact visit, at the discretion of the USMS/BOP/DF.

6.    **No Communal Cells and No Communication Between Cells:**

a.    The inmate shall not be allowed to share a cell with another inmate.

b.    The inmate shall be limited within the USMS/BOP/DF's reasonable efforts and
existing confinement conditions, from communicating with any other inmate by
making statements audible to other inmates or by sending notes to other inmates.

7.    **Recording Conversations Between Cells:**

a.    USMS/BOP/DF/FBI are hereby authorized to place microphones in the hallways and
elsewhere outside the inmate's cell to record any statements made by the inmate to
other inmates or staff.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                    Page 13
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

<u>LIMITED OFFICIAL USE</u>

b.    The Notice of SAM given to the inmate shall notify the inmate that he is subject to such recording.

8.    <u>**Cellblock Procedures:**</u>

a.    The inmate shall be kept separated from other inmates as much as possible while in the cellblock area.

b.    The inmate shall be limited, within USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

9.    <u>**Commissary Privileges:**</u>

The USMS/BOP/DF shall restrict access to commissary items or any other objects determined by USMS/BOP/DF to be capable of being converted into dangerous instruments.

10.    <u>**Access to Mass Communications:**</u>

To prevent the inmate from receiving and acting upon critically-timed information or information coded in a potentially undetectable manner, the inmate's access to materials of mass communication is restricted as follows:

a.    **Periodicals/Newspapers -**

i.    The inmate may have access to publications determined not to facilitate criminal activity or be detrimental to national security; the security, good order or discipline of the institution; or the protection of the public. This determination is to be made by the FBI, in consultation with the USMS/BOP/DF and USA/SDNY.

ii.    Sections of the periodical/newspaper which offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to classified advertisements and letters to the editor, should be removed from the periodicals/newspapers prior to distribution to the inmate.

iii.    The inmate shall then have access to the remaining portions of the periodicals/newspapers in accordance with USMS/BOP/DF policy, after a delay of at least thirty (30) days. In accordance with subparagraph 3(g), above,

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)                                    Page 14
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir

LIMITED OFFICIAL USE

the FBI will review the remaining portions of the publications prior to distribution to the inmate and be responsible for any translations required.

iv.    In order to avoid passing messages/information from inmate to inmate, the inmate shall not be allowed to share the publication(s) with any other inmates.

b.    **Television and Radio** - The inmate is restricted from access to channels/stations which primarily broadcast news, but is permitted access to all other radio and television channels/stations, in accordance with USMS/BOP/DF policies.

c.    **Termination or Limitation** - If the USMS/BOP/DF determines that the mass communications are being used to send messages to the inmate relating to the furtherance of terrorist activities, the inmate's access may be limited or terminated for a period of time to be determined by the USMS/BOP/DF.

11.    **Frequent Cell Searches:**

USMS/BOP/DF is hereby directed to search the inmate's cell frequently and to take appropriate disciplinary action for any infractions.

12.    **Transfer of Custody:**

In the event that the inmate is transferred to or from the custody of the USMS, BOP or any other DF, the SAM provisions authorized for this inmate will continue in effect, without need for any additional DOJ authorization.

**CONCLUSION**

The SAM set forth herein, especially as they relate to attorney/client-privileged communications and family contact, are reasonably necessary to prevent the inmate from committing, soliciting, or conspiring to commit additional criminal activity. Moreover, these measures are the least restrictive that can be tolerated in light of the ability of this inmate to aid knowingly or inadvertently, in plans that create a substantial risk that the inmate's communications or contacts with persons could result in death or serious bodily injury to persons.

With respect to telephone privileges, the SAM is reasonably necessary because of the probability of calls to co-conspirators to arrange terrorist activities.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**                                    Page 15
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir
LIMITED OFFICIAL USE

The SAM, with respect to mail privileges, is reasonably necessary to prevent the inmate from receiving or passing along critically-timed messages. While I recognize that eliminating the inmate's mail privileges entirely may be an excessive measure except in the most egregious of circumstances, I believe that delaying mail delivery, limiting the number of correspondents, and allowing authorized personnel to examine a copy of the mail, is sufficient at this time to adequately ensure that the mail is not used to deliver requests for, or assist in, violent and/or terrorist activities. Under this procedure, the inmate can relate personal news to family members, even if delayed, but he may find it difficult or unwise to pass along restricted information in light of these procedures.

To the extent that the use of a translator is necessary, the Government has the right to make sure that the translator given access to the inmate is worthy of trust.

The SAM's prohibition of contact with the media is reasonably necessary. Communication with the media could pose a substantial risk to public safety if the inmate advocates violent and/or terrorist offenses, or if he makes statements designed to incite such acts.

The SAM's limitations on access to newspapers, publications, television and radio are reasonably necessary to prevent the inmate from receiving and acting upon critically-timed messages. Such messages may be placed in advertisements or communicated through other means, such as the television and/or radio. While I recognize that eliminating the inmate's access to such media may be an excessive measure except in the most egregious of circumstances, I believe that limiting and/or delaying such access may interrupt communication patterns the inmate may develop with the outside world, and ensure that the media is not used to communicate information which furthers terrorist, violent and/or criminal activities.

**SAM CONTACT INFORMATION**

Any questions that you or your staff may have about this memorandum or the SAM directed herein should be directed to Christine Thren or Jack Geise, OEO. They can be contacted at: U.S. Department of Justice, Criminal Division, OEO, 950 Pennsylvania Avenue, N.W., JCK Building, Room 1200, Washington, DC, 20530-0001; telephone (202) 514-6809; and facsimile (202) 616-8256.

LIMITED OFFICIAL USE

**Exhibit B**



**Office of the Attorney General**

**Washington, D. C. 20530**

LIMITED OFFICIAL USE

MEMORANDUM FOR HARLEY G. LAPPIN
                              DIRECTOR
                              FEDERAL BUREAU OF PRISONS

FROM:          THE ACTING ATTORNEY GENERAL *PMc*  1/25/07

SUBJECT:     Origination of Special Administrative Measures (SAM) Pursuant to 28
                  C.F.R. § 501.3 for Federal Bureau of Prisons Inmate Oussama Kassir

     Federal prison inmate Oussama Kassir (Kassir) is charged in twelve terrorism counts based on his participation in two different terrorist conspiracies. The charges relate to his participation in an effort to establish a jihad training camp in Bly, Oregon and his operation of several terrorist websites. Kassir is currently housed at the Metropolitan Correctional Center in Manhattan (MCC New York), where he has been incarcerated since September 25, 2007, following his extradition from the Czech Republic. His case is currently pending before the Honorable John F. Keenan. A trial date has not yet been set.

     Oussama Kassir, also known as "Abu Abdullah" and "Abu Khadija," was a follower of radical Islamic cleric Abu Hamza al-Masri, who is charged as a co-defendant in the same case. The five training camp charges relate to the efforts of Kassir and others to establish a terrorist training camp on a parcel of property located in Bly, Oregon. Those counts primarily accuse Kassir of providing material support to terrorists and, in particular, the al Qaeda terrorist organization, for his activities in Bly. The purpose of the Bly jihad training camp was to provide a place where terrorists could receive various types of training, including military training to gain familiarity with weapons or to prepare for additional military training in Afghanistan.

     In the terrorist website counts, Kassir is charged with developing and operating several websites which promoted terrorism and contained terrorist manuals, such as "The Mujahideen Explosives Handbook" and "The Mujahideen Poisons Handbook." Thus, seven of the counts accuse Kassir of operating terrorist websites on the internet. Those counts also include material support charges, and further allege violations of statutes which make it illegal to (1) provide assistance in the development, production, and use of chemical weapons, and (2) distribute information relating to explosives, destructive devices, and weapons of mass destruction.

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 2

<u>LIMITED OFFICIAL USE</u>

Based upon information provided to me of Kassir's proclivity for violence, I find that there is substantial risk that his communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of serious bodily injury to persons. Therefore, I am requesting that you, pursuant to 28 C.F.R. § 501.3, implement Special Administrative Measures (SAM) to restrict Kassir's access to the mail, the media, the telephone, and visitors. Implementation of this SAM will commence immediately upon notice to the inmate, and the SAM will be in effect for one year from the date of my approval, subject to my further direction.

1.   **General Provisions:**

    a.    **Adherence to Usual United States Marshals Service (USMS), Bureau of Prisons (BOP) and Detention Facility (DF) Policy Requirements** - In addition to the below-listed SAM, the inmate must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc. If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM is more restrictive than usual USMS/BOP/DF policies, then the SAM shall control. If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

    b.    **Interim SAM Modification Authority** - During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify the inmate's SAM as long as any SAM modification authorized by OEO:

        i.    Does not create a more restrictive SAM;

        ii.    Is not in conflict with the request of the U.S. Attorney for the Southern District of New York (USA/SDNY), Federal Bureau of Investigation (FBI), or USMS/BOP/DF, or applicable regulations; and

        iii.    Is not objected to by the USA/SDNY, FBI, or USMS/BOP/DF.

    c.    **Inmate Communications Prohibitions** - The inmate is limited, within USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written or recorded communications) with any other inmate, visitor, attorney, or anyone else except as outlined and allowed by this document that could reasonably foreseeably result in

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 3

LIMITED OFFICIAL USE

the inmate communicating information (sending or receiving) that could circumvent the SAM's intent of significantly limiting the inmate's ability to communicate (send or receive) information relating to terrorist information.

d.   **Use of Interpreters/Translators by USMS/BOP/DF** - Translator approval requirement:

i.     USMS/BOP/DF may use Department of Justice (DOJ) approved translators as necessary for the purpose of facilitating communication with the inmate.

ii.    No person shall act as a translator without prior written clearance/approval from USMS/BOP/DF, which shall only be granted after consultation with the FBI and USA/SDNY.

iii.   Translators utilized by USMS/BOP/DF shall not be allowed to engage in, or overhear, unmonitored conversations with the inmate. Translators shall not be alone with the inmate, either in a room or on a telephone or other communications medium.

2.   **Attorney/Client Provisions:**

a.   **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document** - The inmate's attorney (or counsel) – individually by each if more than one – must sign an affirmation acknowledging receipt of the SAM restrictions document. By signing the affirmation, the attorney acknowledges his/her awareness and understanding of the SAM provisions and his/her agreement to abide by these provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff. The signing of the affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM. However, in signing the affirmation, the inmate's attorney, and precleared staff,

---

[1]The term "attorney" refers to the inmate's attorney of record, who has been verified and documented by the USA/SDNY, and who has received and acknowledged receipt of the SAM restrictions document. As used in this document, "attorney" also refers to more than one attorney where the inmate is represented by two or more attorneys, and the provisions of this document shall be fully applicable to each such attorney in his/her individual capacity.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 4

LIMITED OFFICIAL USE

acknowledge the restriction that they will not forward third-party messages to or from the inmate.

    i.    The USA/SDNY shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to the inmate's attorney.

    ii.    After initiation of SAM and prior to the inmate's attorney being permitted to have attorney/client-privileged contact with the inmate, the inmate's attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/SDNY.

    iii.    The USA/SDNY shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C. and the USMS/BOP/DF.

b.    **Attorney Use of Interpreters/Translators -**

    i.    Necessity Requirement - No interpreter/translator (translator) shall be utilized unless absolutely necessary where the inmate does not speak a common language with the attorney. Any translator shall be precleared.[2]

    ii.    Attorney Immediate Presence Requirement - Any use of a translator by the attorney shall be in the physical and immediate presence of the attorney - in the same room. The attorney shall not patch through telephone calls, or any other communications, to or from the inmate.

    iii.    Translation of Inmate's Correspondence - An attorney of record may only allow a federally approved translator to translate the inmate's correspondence as necessary for attorney/client privileged communication.

c.    **Attorney/Client Privileged Visits -** May be contact or non-contact, at the discretion of the USMS/BOP/DF.

---

[2]"Precleared" refers to a translator, who is actively assisting the inmate's attorney with the inmate's defense, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his/her signature – to adhere to the SAM restrictions and requirements.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 5

<u>LIMITED OFFICIAL USE</u>

d.  **Attorney May Disseminate Inmate Conversations** - The inmate's attorney may disseminate the contents of the inmate's communication to third parties for the sole purpose of preparing the inmate's defense – and not for any other reason – on the understanding that any such dissemination shall be made solely by the inmate's attorney, and not by the attorney's staff.

e.  **Unaccompanied Attorney's Precleared Paralegal(s)[3] May Meet With Client** - The inmate's attorney's precleared paralegal(s) may meet with the inmate without the necessity of the inmate's attorney being present. An investigator or translator may not meet alone with the inmate. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

f.  **Simultaneous Multiple Legal Visitors** - The inmate may have multiple legal visitors provided that at least one of the multiple legal visitors consists of the inmate's attorney or precleared paralegal. These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

g.  **Legally Privileged Telephone Calls** - The following rules refer to all legally-privileged telephone calls or communications:

    i.  Inmate's Attorney's Precleared Staff May Participate in Inmate Telephone Calls - The inmate's attorney's precleared staff are permitted to communicate directly with the inmate by telephone, provided that the inmate's attorney is physically present and participating in the legal call as well.

    ii.  Inmate's Initiation of Legally-Privileged Telephone Calls - Inmate initiated

---

[3]"Precleared" when used with regard to an attorney's staff, or "precleared staff member," refers to a co-counsel, paralegal, or an investigator who is actively assisting the inmate's attorney with the inmate's defense, who has submitted to a background check by the FBI and USA/SDNY, who has successfully been cleared by the FBI and USA/SDNY, and who has received a copy of the inmate's SAM and has agreed – as evidenced by his/her signature – to adhere to the SAM restrictions and requirements. As used in this document, "staff member" also refers to more than one staff member, and the provisions of this document shall be fully applicable to each such staff member in his/her individual capacity. A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 6

LIMITED OFFICIAL USE

telephone communications with his attorney or precleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to the inmate only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is the inmate's attorney. This privilege is contingent upon the following additional restrictions:

(1)    The inmate's attorney will not allow any non-precleared person to communicate with the inmate, or to take part in and/or listen to or overhear any communications with the inmate.

(2)    The inmate's attorney must instruct his/her staff that:

    (a)    The inmate's attorney and precleared staff are the only persons allowed to engage in communications with the inmate.

    (b)    The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send the inmate's communications to third parties.

(3)    No telephone call/communication, or portion thereof, except as specifically authorized by this document:

    (a)    Is to be overheard by a third party.[4]

    (b)    Will be patched through, or in any manner forwarded or transmitted to a third party.

    (c)    Shall be divulged in any manner to a third party, except as otherwise provided in Section 2(d).

---

[4]For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities when acting in connection with their official duties. This section does not allow monitoring of attorney/client privileged communications.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 7

(d) Shall be in any manner recorded or preserved.[5] The inmate's attorney may make written notes of attorney/client -privileged communications.

(4) If USMS/BOP/DF, FBI or USA/SDNY determines that the inmate has used or is using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, the inmate's ability to contact his attorney by telephone may be suspended or eliminated.

h. **Documents Provided by Attorney to Inmate** - The inmate's attorney may provide his/her client with or review with the inmate, documents related to his defense, including discovery materials, court papers (including indictments, court orders, motions, etc.), and/or material prepared by the inmate's attorney, so long as any of the foregoing documents are translated, if translation is necessary, by a precleared translator. Any document not related to the inmate's defense must be sent to the inmate via general correspondence and will be subject to the mail provisions of subparagraphs 2 (i) and 3(g). Documents previously reviewed and cleared for receipt by the inmate, and already in the inmate's possession at the outset of the visit, may be discussed or reviewed by the inmate and the inmate's attorney during the visit.

i. None of the materials provided may include inflammatory materials, materials inciting to violence or military training materials, or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/SDNY and the FBI.

ii. The USA/SDNY may authorize additional documents to be presented to the inmate. If any document not listed or described above needs to be transmitted to the inmate, consent for the transmission of the document can be obtained from the USA/SDNY without the need to formally seek approval for an amendment to the SAM.

---

[5]Except by USMS/BOP/DF, FBI, DOJ or other duly authorized federal authorities. This section does not allow monitoring of attorney/client privileged communications.

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 8

    f.     **Legal Mail** - The inmate's attorney may not send, communicate, distribute, or divulge the inmate's mail, or any portion of its contents (legal or otherwise), to third parties.[6]

         i.     In signing the SAM acknowledgment document, the inmate's attorney and precleared staff will acknowledge the restriction that only inmate case-related documents will be presented to the inmate, and that neither the attorney nor his/her staff will forward third-party mail to or from the inmate.

3.    **Inmate's Non-legal Contacts:**

    a.     **Non-legal Telephone Contacts -**

         i.     The inmate is limited to non-legal telephone calls with his immediate family members.[7]

         ii.     The quantity and duration of the inmate's non-legal telephone calls with his immediate family members shall be set by the USMS/BOP/DF, with a minimum of one call per month, unless otherwise agreed upon by USMS/BOP/DF, FBI and USA/SDNY to allow more calls.

    b.     **Rules for Telephone Calls** - For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

         i.     Is to be overheard by a third party.[8]

---

[6]Legal mail is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney of record. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

[7]The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF, FBI-verifiable) spouse, natural children, parents, and siblings.

[8]For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities when monitoring in connection with their official duties. This section does not allow monitoring of attorney/client communications.

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 9
LIMITED OFFICIAL USE

    ii.    Is to be patched through, or in any manner forwarded or transmitted, to a third party.

    iii.    Shall be divulged in any manner to a third party.

    iv.    Shall be in any manner recorded or preserved.[9]

All telephone calls shall be in English unless a fluent FBI, USMS/BOP/DF approved translator is available to contemporaneously monitor the telephone call. Arranging for a translator may require at least fourteen days advance notice.

c.    **Telephone SAM Restriction Notifications** - For all non-legal telephone calls to the inmate's immediate family member(s):

    i.    USMS/BOP/DF shall inform the inmate of the telephone SAM restrictions prior to each telephone call.

    ii.    USMS/BOP/DF shall verbally inform the inmate's immediate family member(s) on the opposite end of the inmate's telephone communication of the telephone SAM. USMS/BOP/DF is only required to notify the inmate's communication recipient in English.

    iii.    USMS/BOP/DF shall document each such telephone notification.

d.    **Family Call Monitoring** - All calls with the inmate's immediate family member(s) shall be:

    i.    Contemporaneously monitored by the FBI.

    ii.    Contemporaneously recorded (as directed by the FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

    iii.    A copy of each inmate/immediate family member telephone call recording shall be provided by USMS/BOP/DF on a single, individual cassette tape

---

[9]Except by USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 10

<u>LIMITED OFFICIAL USE</u>

(per call) for forwarding to the FBI. These recordings shall be forwarded on a call-by-call basis as soon as practicable.

e.    **Improper Communications** - If telephone call monitoring or analysis reveals that any call or portion of a call involving the inmate contains any indication of a discussion of illegal activity, the soliciting of or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the inmate shall not be permitted any further calls to his immediate family members for a period of time to be determined by USMS/BOP/DF. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

f.    **Non-legal Visits -**

    i.    **Limited Visitors -** The inmate shall be permitted to visit only with his immediate family members. The visitor's identity and family member relationship to the inmate will be confirmed by the USMS/BOP/DF and FBI in advance.

    ii.    **English Requirement -** All communications during non-legal inmate visits will be in English unless a fluent FBI, USMS/BOP/DF approved translator is readily available to contemporaneously monitor the communication/visit.

    iii.    **Visit Criteria -** All non-legal visits shall be:

        (1)    Contemporaneously monitored by USMS/BOP/DF and/or FBI, in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

        (2)    Permitted only with a minimum of 14 calendar days advance written notice to the USMS/BOP/DF facility where the inmate is housed.

        (3)    Without any physical contact. All such meetings shall be non-contact to protect against harm to visitors or staff should the inmate

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 11

<u>LIMITED OFFICIAL USE</u>

attempt to take hostages.

(4)    Limited to one adult visitor at a time. However, FBI-verified children of the inmate may visit with a pre-approved adult visitor.

g.    **Non-legal Mail** - Any mail not clearly and properly addressed to/from the inmate's attorney and marked "Legal Mail" (incoming or outgoing). Non-legal mail is limited to only the inmate's immediate family, U.S. courts, federal judges, U.S. Attorney's Offices, members of U.S. Congress, BOP, other federal law enforcement entities, and, if the inmate is a citizen of a foreign country, a verified consular representative of that country.

i.    **General correspondence with limitations:** correspondence is restricted to only immediate family members. Volume and frequency of outgoing general correspondence with immediate family members only may be limited to three pieces of paper (not larger than 8 1/2 x 11), double-sided, once per calendar week to a single recipient, at the discretion of the USMS/BOP/DF. The identity and family member relationship to the inmate will be confirmed by USMS/BOP/DF and FBI.

ii.    **General correspondence without limitations:** correspondence to U.S. courts, federal judges, U.S. Attorney's Offices, members of U.S. Congress, BOP, and other federal law enforcement entities. There is no volume nor frequency limitation on mail to/from these parties unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing to protect the security, good order or discipline of the institution, the public or national security may be jeopardized .

iii.    All non-legal mail will be:

(1)    **Copied** - Shall be copied (including the surface of the envelope) by the warden, or his/her designee, of the facility in which the inmate is housed.

(2)    **Forwarded** - Shall be forwarded, in copy form, to the location designated by the FBI.

<u>LIMITED OFFICIAL USE</u>

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 12

LIMITED OFFICIAL USE

(3)   **Analyzed** - After government analysis and approval, if appropriate, the inmate's incoming/outgoing non-legal mail will be forwarded to the USMS/BOP/DF for delivery to the inmate (incoming); or directly to the addressee (outgoing).

The federal government will forward the inmate's non-legal mail to the USMS/BOP/DF for delivery to the inmate or directly to the addressee after a review and analysis period of:

(a)   A reasonable time not to exceed fourteen (14) business days for mail which is written entirely in the English language.

(b)   A reasonable time not to exceed sixty (60) business days for any mail which includes writing in any language other than English, to allow for translation.

(c)   A reasonable time not to exceed sixty (60) business days for any mail where the Federal Government has reasonable suspicion to believe that a code was used, to allow for decoding.

iv.   **Mail Seizure** - If outgoing/incoming mail is determined by USMS/BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging of acts of violence or terrorism, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to the FBI for appropriate action. The inmate shall be notified in writing of the seizure of any mail.

4.   **Communication With News Media:**

a.   The inmate will not be permitted to talk with, meet with, correspond with, or otherwise communicate with any member, or representative, of the news media, in person, by telephone, by furnishing a recorded message, through the mail, through his attorney, through a third party, or otherwise.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 13

5.   No Group Prayer:

    a.   The inmate shall not be allowed to engage in group prayer with other inmates.

    b.   If an FBI and/or USMS/BOP/DF approved religious representative is to be present for prayer with the inmate, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF.

6.   No Communal Cells and No Communication Between Cells:

    a.   The inmate shall not be allowed to share a cell with another inmate.

    b.   The inmate shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates.

7.   Recording Conversations Between Cells:

    a.   USMS/BOP/DF, FBI are hereby authorized to place microphones in the hallways and elsewhere outside the inmate's cell to record any statements made by the inmate to other inmates or staff.

    b.   The Notice of SAM given to the inmate shall notify the inmate that he is subject to such recording.

8.   Cellblock Procedures:

    a.   The inmate shall be kept separated from other inmates as much as possible while in the cellblock area.

    b.   The inmate shall be limited, within USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

9.   Commissary Privileges:

    a.   The USMS/BOP/DF shall restrict access to commissary items or any other objects determined by USMS/BOP/DF to be capable of being converted into dangerous

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 14

  instruments.

10.    <u>Access to Mass Communications:</u>

To prevent the inmate from receiving and acting upon critically-timed information or
information coded in a potentially undetectable manner, the inmate's access to materials
of mass communication is restricted as follows:

a.    **Periodicals/Newspapers** -

i.    The inmate may have access to publications determined not to facilitate
criminal activity or be detrimental to national security; the security, good
order or discipline of the institution; or the protection of the public. This
determination is to be made by the FBI, in consultation with the
USMS/BOP/DF and USA/SDNY.

ii.    Sections of the periodical/newspaper which offer a forum for information
to be passed by unknown and/or unverified individuals, including but not
limited to classified advertisements and letters to the editor, should be
removed from the periodicals/newspapers prior to distribution to the
inmate.

iii.    The inmate shall then have access to the remaining portions of the
periodicals/newspapers in accordance with USMS/BOP/DF policy, after a
delay of at least thirty (30) days. In accordance with subparagraph 3(g),
above, the FBI will review the remaining portions of the publications prior
to distribution to the inmate and be responsible for any translations
required.

iv.    In order to avoid passing messages/information from inmate to inmate, the
inmate shall not be allowed to share the publication(s) with any other
inmates.

b.    **Television and Radio** - The inmate is restricted from access to channels/stations
which primarily broadcast news, but is permitted access to all other radio and
television channels/stations, in accordance with USMS/BOP/DF policies.

c.    **Termination or Limitation** - If the USMS/BOP/DF determines that the mass
communications are being used to send messages to the inmate relating to the

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.3
Inmate - Oussama Kassir, Page 15

furtherance of terrorist activities, the inmate's access may be limited or terminated for a period of time to be determined by the USMS/BOP/DF.

11. **Frequent Cell Searches:**

a.    USMS/BOP/DF is hereby directed to search the inmate's cell frequently and to take appropriate disciplinary action for any infractions.

12. **Transfer of Custody:**

In the event that the inmate is transferred to or from the custody of the USMS, BOP or any other DF, the SAM provisions authorized for this inmate will continue in effect, without need for any additional DOJ authorization.