

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 13, 2014

**BY ELECTRONIC MAIL**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007
ForrestNYSDChambers@nysd.uscourts.gov

   Re: <u>United States v. Mustafa Kamel Mustafa, a/k/a "Abu Hamza"</u>
      04 Cr. 356 (KBF)

Dear Judge Forrest:

  As the Court is aware, the defendant has moved pursuant to Federal Rule of Evidence 613(b) for the admission of certain extrinsic evidence, offered to impeach the testimony of various trial witnesses. The proffered extrinsic evidence is documentary, and falls into four categories: (1) Federal Bureau of Investigation 302s of witness interviews; (2) handwritten notes of witness interviews; (3) Grand Jury transcripts reflecting prior witness testimony; and (4) trial transcripts from *United States v. Kassir*, 04 Cr. 356 (JFK) reflecting prior witness testimony.

  With respect to categories (1) and (2), the 302s and handwritten notes, controlling Second Circuit law flatly precludes admission of the proffered extrinsic evidence. *See infra* at Part I.

  With respect to categories (3) and (4), there is a small volume of documents at issue. None of these can be offered as Rule 613(b) extrinsic evidence.

  **I.**  <u>**The 302s and Handwritten Notes**</u>

  The Court of Appeals has held that a third-party's notes of a witness interview "may not be admitted as a prior inconsistent statement unless they are a verbatim transcript of the witness's own words." *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992). This has long been the law in this Circuit, and in other Circuits. *See, e.g., United States v. Strother*, 49 F.3d 869, 875 (2d Cir. 1995) (collecting cases). And this is the law regardless of whether the third-party's notes of the witness interview are in the form of handwritten notes (as in *Almonte*) or in the form of an FBI report (as in *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980)).

Hon. Katherine B. Forrest
May 13, 2014
Page 2

Here, the defendant has not attempted to establish that either the 302s or the handwritten notes reflect a verbatim transcription of the words of the witness who was being interviewed. This is hardly surprising. An agent's handwritten notes are very rarely verbatim. And a 302 is almost always itself based on handwritten notes, and is accordingly even less likely to be a verbatim transcription than the notes upon which it is based.

The defendant bears the burden of showing that the 302s and handwritten notes are verbatim transcripts. *See Almonte*, 956 F.2d at 29 ("The burden of proving that notes reflect the witness's own words rather than the note-taker's characterization falls on the party seeking to introduce the notes."). That he has not sought to do so is fatal to his motion with respect to those materials.

## II.     The Transcripts

There is no categorical bar to the admission of a transcript as extrinsic evidence; such transcripts are generally verbatim. Accordingly, to the extent that proffered extrinsic evidence is in the form of a transcript, whether from a Grand Jury proceeding or a prior trial, the extrinsic evidence is at least potentially admissible.

Here, there are nine proffered pieces of extrinsic evidence that are Grand Jury or trial transcripts. Each piece of evidence is considered below, *see infra* Part II.B, after a short discussion of the controlling legal principles, *see infra* Part II.A.

### A.     Legal Principles

When considering a proffer of extrinsic evidence with respect to a prior inconsistent statement, several factors must be considered. Three are relevant here.

First, the Court must determine if the trial testimony is inconsistent with the proffered prior statement. *See United States* v. *Arena*, 180 F.3d 380, 400 (2d Cir. 1999) ("[E]xtrinsic evidence of a prior statement [is admissible] only if, *inter alia*, the statement is inconsistent with [the witness'] trial testimony."), *abrogated on other grounds*, *Scheidler* v. *National Org. for Women, Inc.*, 537 U.S. 393, 403 n.8 (2003). A witness's good-faith failure to recall a prior statement is not generally understood as creating an inconsistency for the purposes of Rule 613(b). *See, e.g., United States* v. *Shillingstad*, 632 F.3d 1031, 1038 (8th Cir. 2011); *United States* v. *DeSimone*, 488 F.3d 561, 571-72 (1st Cir. 2007)*; cf. United States v. Insana,* 423 F.2d 1165, 1170 (2d Cir. 1970) ("[T]here may be circumstances where the witness in good faith asserts that he cannot remember the relevant events. In such circumstances the trial court may, in its discretion, exclude the prior testimony."). By contrast, a witness's failure to recall a statement for other reasons (to assist one of the parties, for example) is generally understood as creating an inconsistency for the purposes of Rule 613(b). *Cf. Insana,* 423 F.2d at 1169-70.

Second, "[a] witness may be impeached by extrinsic proof of a prior inconsistent statement only as to matters which are not collateral, *i.e.*, as to those matters which are relevant to the issues in the case and could be independently proven." *United States* v. *Blackwood*, 456 F.2d 526, 531 (2d Cir. 1972)); *see, e.g.*, *United States* v. *Rivera*, 273 Fed. Appx. 55, 58 (2d Cir. Apr. 11, 2008) (holding that evidence of alleged murder committed by Government witness that was not disclosed to Government was properly excluded as collateral).

Third, even if all of the Rule 613 requirements have been satisfied, the Court nonetheless may exclude the extrinsic evidence under Rule 403. *See Ghailani*, 761 F. Supp. 2d at 118.

### B. Application

The defendant has identified nine prior statements that are memorialized in Grand Jury transcripts or the transcripts of a prior trial. For the reasons set forth below, extrinsic evidence should not be permitted as to any of these prior statements.

#### 1. Eva Hatley

The defendant has identified three prior statements from Hatley's prior testimony during the trial of *United States v. Kassir*, 04 Cr. 356 (JFK), as well as Hatley's testimony before the Grand Jury.[1]

First, the defendant seeks to introduce Hatley's *Kassir* testimony that Haroon Aswat and Kassir arrived at Bly with "Bilal" and a cab driver. (Hatley Stip. ¶ 2; 3506-D at 969). This is said to contradict Hatley's testimony at the instant trial that she did not recall whether or not Bilal and the cab driver were present at Bly during the same visit as Aswat and Kassir. (Tr. 982). When confronted with her *Kassir* testimony during the instant trial, Hatley simply said that she did not recall whether she had previously testified in that manner. (Tr. 982-83).

The referenced extrinsic evidence should not be offered. This point, as to who was present at Bly when Kassir and Aswat arrived there, is simply not significant. It is far removed from the fundamental point, abundantly proven, that Kassir and Aswat spent months at Bly. *Cf. Ghailani*, 761 F. Supp. 2d at 124 ("fundamental point"), 127 (abundance of evidence). And Hatley's failure to recall an especially small detail of what happened on one night, nearly 15 years ago, hardly creates a "contradiction" within the meaning of Rule 613. *See Shillingstad*, 632 F.3d at 1038; *DeSimone*, 488 F.3d at 571-72; *cf. Insana,* 423 F.2d at 1170.

Second, the defendant seeks to introduce Hatley's prior testimony before the Grand Jury with respect to an asserted inconsistency between that testimony and her trial testimony. Hatley's testimony related to what is plainly a collateral matter --- that is, a discussion of conversations about plans to kill truck drivers alongside the road near Bly. (Hatley Stip. ¶ 3;

---

[1] Defense counsel has agreed to withdraw paragraph six of the stipulation.

Hon. Katherine B. Forrest
May 13, 2014
Page 4

3506-A at 27-28).  And Hatley's failure of recall on this small point does not create a Rule 613 "contradiction."  *See Shillingstad*, 632 F.3d at 1038; *DeSimone*, 488 F.3d at 571-72; *cf. Insana*, 423 F.2d at 1170  ("[T]here may be circumstances where the witness in good faith asserts that he cannot remember the relevant events.  In such circumstances the trial court may, in its discretion, exclude the prior testimony.").

Third, the defendant seeks to introduce Hatley's *Kassir* testimony that Kassir "said that he had gotten a fax, or that Abu Hamza had gotten a fax from Bilal, and that what was said in the fax wasn't true." (Hatley Stip. ¶ 4; 3506-D at 933).  During her testimony at the instant trial, and in response to a question on cross-examination, Hatley testified that "Abu Hamza had gotten the fax" and that Kassir said he got the fax from Abu Hamza.  (Tr. 1003).  Hatley's *Kassir* testimony is not inconsistent with her testimony at the instant trial.  Indeed, it appears that, in her *Kassir* testimony, Hatley began by initially stating that Kassir had received the fax but then corrected herself to state that Hamza had received the fax.

### 2.    Angelica Morris

The defendant has identified six prior statements from Morris's prior testimony during the trial of *United States v. Kassir*, 04 Cr. 356 (JFK), as well as Morris's testimony before the Grand Jury.

First, the defendant seeks to introduce Morris' testimony before the Grand Jury that women at Bly were not involved in jihad-type training.  (Morris Stip. ¶ 2; 3507-A at 83).  But Morris' testimony on this point was collateral.  And her testimony at trial was not inconsistent with her Grand Jury testimony because she was responding to a different question on each occasion.  During her testimony before the Grand Jury, Morris was asked, "were any of the women ever involved in jihad-type training?"  (3507-A at 83).  During trial, Morris was asked a much more open-ended question, one that was not tethered in any way to things that Morris had herself witnessed: "in general, as far as you know, your understanding of Islam, women are not involved in violent jihad training, are they?" (Tr. 230).  Different answers to these very different questions are not the stuff of Rule 613 contradiction.

Second, the defendant seeks to introduce Morris' *Kassir* testimony that she did not think that her brother engaged in jihad training in preparation for carrying out jihad.  (Morris Stip. ¶ 6).  During her prior testimony, Morris was asked, "[b]rothers had already trained at the ranch, correct?" (3507-4D at 1086).  Morris responded, "[t]hey were shooting guns, but I don't recall whether it was training.  They were just sort of there shooting guns." (*Id.*).  During her testimony at the instant trial, Morris testified as follows:

> Q.  And as far as you know, those brothers from the Seattle mosque, as far as you can see during the first trip, were not training, were they?

> A. I guess it depends what you consider training.
>
> Q. Well, how about what you consider training. Would you use that word "training." Is it fair to say that the brothers in the first trip were not training.
>
> A. I can consider shooting part of training, so.

(Tr. 1086). There is no contradiction here. In both instances, Morris described shooting. With respect to training, at the *Kassir* trial Morris indicated that she did not recall whether training was taking place; and at the instant trial, the cross-examination never moved beyond defining the terms (which did not fully happen). In addition, it can hardly be said that Morris's characterization of certain events as training or not is anything but a collateral matter. *Cf. Ghailani*, 761 F. Supp. 2d at 127 (characterization), 128 (same).

Third, the defendant seeks to introduce a portion of Morris's Grand Jury testimony. (Morris Stip. ¶ 17). But again, there is no contradiction. During her Grand Jury testimony, Morris was asked whether Kassir ever showed "you or Semi Osman or your brother any of the techniques that he learned or used from his training experience in Afghanistan and Kashmir?" (3507-A at 49). Morris responded, "[y]es. He showed me and my brother how to properly slice someone's throat." (*Id.*). During trial, Morris testified that she, Semi Osman, Aswat, and Morris' brother were present during the throat-slicing demonstration. (Tr. 286-87). Morris' Grand Jury testimony—which addressed who had received the instruction from Kassir, rather than who was present for the demonstration—is not inconsistent with her trial testimony. Morris's Grand Jury testimony does not purport to itemize the names of the people at the demonstration.

Fourth, the defendant seeks to introduce Morris's *Kassir* testimony that when Kassir left Bly, he briefly left a shotgun at the farm. (Morris Stip. ¶ 18). During her testimony at the instant trial, Morris was asked whether Kassir had left a shotgun at Bly when he left the ranch. (Tr. 292). Morris responded that she did not remember where the shotgun was left. (Tr. 292). When confronted with her prior testimony that "the gun stayed in Bly with us for a while," (3507-4D at 1039), Morris responded, "[i]t's possible. I don't remember." (Tr. 293). Impeachment with extrinsic evidence is improper because Morris testified that she did not recall where the shotgun was left. *See Shillingstad*, 632 F.3d at 1038; *DeSimone*, 488 F.3d at 571-72; *cf. Insana,* 423 F.2d at 1170. Moreover, when confronted with her prior testimony, Morris acknowledged that it was possible that she had testified in that manner. Allowing the defendant to introduce additional, extrinsic evidence of that prior testimony would be cumulative and accordingly runs afoul of Rule 403. Finally, Morris' testimony regarding where the shotgun was initially left—particularly in light of the parties' stipulation that it was subsequently recovered from the Dar Us Salaam Mosque (GX-23)—is collateral and has no substantial bearing on this case.

Hon. Katherine B. Forrest
May 13, 2014
Page 6

Fifth, the defendant seeks to introduce Morris's Grand Jury testimony that Kassir at one point told her over the phone that Aswat had been killed in Afghanistan. (Morris Stip. ¶ 33). As an initial matter, extrinsic evidence of Morris' prior testimony is not warranted because Morris testified at the instant trial that she did not recall whether Kassir had told her that Haroon had been killed in Afghanistan. (Tr. 324). *See Shillingstad*, 632 F.3d at 1038; *DeSimone*, 488 F.3d at 571-72; *cf. Insana*, 423 F.2d at 1170. Moreover, when questioned about whether she recalled her prior Grand Jury testimony, Morris responded, "I remember testifying to that, but I don't recall the actual conversation." (Tr. 324-25). Because Morris initially testified that she did not recall Kassir's statement and then adopted the substance of her prior testimony, extrinsic evidence of her prior testimony is precluded. Finally, this testimony also is collateral, and is not admissible under Rule 403: Kassir's statement to Morris, which was made sometime after September 11, 2001, occurred well after the relevant events at Bly.

Finally, the defendant seeks to introduce evidence that Morris previously testified that when Hamza called Bly, he spoke with Semi Osman, Haroon, and Kassir, but did not mention that Hamza had first briefly spoken with her (Morris) on the phone. (Morris Stip. ¶ 36). But this is a point of vanishing smallness; this is a plainly collateral matter, particularly considering that during his direct testimony, Hamza corroborated Morris' account of having spoken by telephone while Morris was at Bly. (Tr. 3320). Moreover, Morris fully adopted her prior testimony. When confronted with her prior answers, Morris acknowledged that she had given those answers and also acknowledged that she had not mentioned anything about talking with Hamza on the phone. (Tr. 330-31).

        Respectfully submitted,

        PREET BHARARA
        United States Attorney

By:    _____/s/_____
        John P. Cronan
        Edward Y. Kim
        Ian McGinley
        Assistant United States Attorneys
        Tel.: (212) 637-2200

cc:    Jeremy Schneider, Esq.
        Joshua Dratel, Esq.