FAGAAUJAC                       Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              04 CR 356 (KBF)

EARNEST J. UJAAMA,

              Defendant.

------------------------------x

                                  New York, N.Y.
                                  October 16, 2015
                                  1:25 p.m.

Before:

              HON. KATHERINE B. FORREST,

                          District Judge

                  APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
JOHN CRONAN
SHANE STANSBURY
    Assistant United States Attorney

PETER OFTENBECHER
    Attorney for Defendant Ujaama

1              (Case called)
2              MR. CRONAN:  John Cronan, for the government, or good
3     afternoon I should say, along with Shane Stansbury and George
4     Corey.
5              MR. OFTENBECHER:  Peter Oftenbecher, appearing for
6     Mr. Ujaama.
7              Good afternoon, your Honor.
8              THE COURT:  Good afternoon.
9              Now we don't have Mr. Ujaama here but I understand
10    that Mr. Ujaama is going to waive his appear; is that correct?
11             MR. OFTENBECHER:  Yes, your Honor.
12             THE COURT:  You've spoken with him about that?
13             MR. OFTENBECHER:  I have, your Honor.
14             THE COURT:  All right.  Terrific.  I have heard
15    through my deputy about the reason for you folks requesting the
16    conference and I've also seen the e-mail, Mr. Oftenbecher, that
17    you've sent in this morning.  I've already read your sentencing
18    memorandum.  I actually read the whole thing.  I had more time
19    to read it than just read pages three through 14.  I also look
20    at the government's note which came in.  The government, I have
21    not read it closely because I got it a little bit later but I
22    have read the sections that I think are relevant.
23             As I see from the footnote from the government the
24    government doesn't disagree that the correct period of
25    supervised release is three years.  And I understand that that

1    was really the issue that we were here for.  And as I
2    understand it the government's not going to contest that and I
3    have frankly no independent reason to try to impose anything
4    longer if you both are in agreement that that's the right
5    timeframe.
6             MR. CRONAN:  Correct, your Honor.  This was just -- we
7    wanted to flag this issue so we didn't spring it upon the Court
8    next Friday.  But basically there is an ambiguity in the plea
9    that could potentially be down to the detriment of the
10   defendant and we think that as a matter of fairness, as a
11   matter of what he allocuted to, what his conduct actually was,
12   the maximum term of supervised release should be three years
13   and not the life time period.
14            THE COURT:  All right.  Mr. Oftenbecher.
15            MR. OFTENBECHER:  Yes, your Honor.  I just wanted to
16   as I've indicated in our pleading at page thirteen, I think the
17   Court needs to make a finding prior to the time of sentencing
18   that three years is the maximum period of supervised release
19   for this case for all purposes including any potential
20   extension or revocation under 3583(E) or (H).
21            Those are the troubling points.  I understand that the
22   Court wouldn't be interested in imposing a sentence of
23   supervised lease longer than three years.  The mischief in the
24   statute is simply that at some point down the road if there
25   were any supervised lease imposed by the Court it's possible

1  for another you -- this Court or another Court to extend the
2  period of supervised release up to lifetime if the Court finds
3  that that is the statutory maximum in this case.
4         Also, there could be revocation under 3583(H) for the
5  rest of Mr. Ujaama's life, essentially, if the Court, if the
6  statutory maximum is a lifetime term.  So, we're simply -- and
7  we can, if you'd like we can submit to the Court a written
8  finding along those lines.
9         THE COURT:  No.  I don't think it would be difficult
10 to come up with the right wording.  I'm not certain that I have
11 to do it prior to sentencing as opposed to at sentencing.  I
12 think that the point is really to make the finding.  I do want
13 to think about whether or not I want to make a finding.  I
14 don't think there'll be any issue as to the amount of
15 supervised release that this Court intends to impose which is
16 not more than three years and then I will state right now
17 because of the agreement that you folks have reached and I have
18 no reason to disagree with that, that does not in any way
19 preview what I might do with the remainder of the sentence but
20 whether I make a finding I think is --
21        MR. OFTENBECHER:  Let me respectfully suggest why it
22 is important.  The law requires in order to preserve this issue
23 for Mr. Ujaama down the road I need to raise this prior to the
24 time of sentencing.  I'm raising it now.  But the way that it
25 needs to be raised in order to preserve it for Mr. Ujaama the

1  law tells me -- I'm not suggesting this is my choice -- I would
2  need to file a motion to vacate the guilty plea as to Counts
3  Two and Three and get a ruling from the Court prior to his
4  sentencing hearing on that.  Otherwise, the law in at least the
5  Second Circuit is clear to me the issue is not preserved and
6  it's waived.
7          THE COURT:  That, I would be interested in seeing your
8  cases on.  I can't imagine you would ever do that.  I mean, if
9  you would do that that would be quite suggestive to me of your
10 view of your client's likelihood of recidivism or where he
11 might have a revocation of supervised release.  It would be a
12 statement as to your judgment about the likelihood of -- cause
13 it's quite sort of the nuclear option after he's engaged in
14 cooperation, etc., to withdraw his guilty plea.
15         MR. OFTENBECHER:  Your Honor, it's not an issue that I
16 chose.  It's not an issue that Mr. Cronan chose.  Actually, the
17 probation officer is the person who flagged this.  But I think
18 I've discussed this with Mr. Cronan.  He understands the only
19 way to preserve this issues is to file the motion prior to the
20 time of sentencing.  The Court can deny the motion.
21         THE COURT:  Well, I can take it as an oral motion.  I
22 can take it as an oral motion right now.  If you want to make
23 an oral motion to withdraw the plea on that basis and on that
24 basis alone to resolve the technical issue.  Then I'll decide
25 whether or not I want to grant the motion and if so you folks

can do a new plea the day of sentencing and we can go into sentencing directly afterwards or we can do something different but I take it as an oral motion right now.

MR. OFTENBECHER:  I think this probably is entirely solved as long as the Court makes a finding prior to the time of sentencing that for all purposes -- and I'm not trying to predict his failure on supervised release at all but I found that after 35 years as a lawyer I'm not that good at predicting things any more.  So I need to do my job.  I didn't do my job this time.  Frankly, when the time that this plea was entered and, frankly, it'll be ineffective assistance of counsel if it has to go any further.  Although, everybody in the room was of the same opinion.

So I cannot preserve my client's right.  I cannot fail to preserve my client's right particularly when I'm the one who caused it in the first place.  So that's my position.

THE COURT:  OK.  I hear you.  I think that it is ripe to raise it.  It is ripe to try to position it in the correct procedural posture to preserve it.  It sounds like you have looked at what procedural posture you need to be in to do that.  Because that would be a new, something new to me I would like if you could just send me the case or cases.  It sounds like you've got them probably at the ready.  That would be terrific.  I, to make the finding and thereby bind a future court should there be a violation of supervised release I'd want to do more

FAGAAUJAC                       Conference

1    than I've done to get us to this point here this morning which

2    is simply to assure myself that the government has not taken a

3    position of more than three years at this time.

4            MR. CRONAN:  And, your Honor, maybe I could get a

5    little bit more background here to be, the information to which

6    Mr. Ujaama pled guilty predated everyone's involvement or at

7    least this table, Mr. Stansbury and myself and Mr. Kim's

8    involvement in this case.

9            It appears that the date in the information of

10   December 2001 reflects a date that Abassi was captured in

11   Afghanistan.  If your Honor will recall there was testimony in

12   Abuhamda's trial about that date.  By then Mr. Ujaama had left

13   Abassi in Pakistan.  He still was with Abuhamda through part of

14   2001, but by early October 20001 while he again was in Pakistan

15   he ceased his contact with Abuhamda.  They had a falling out as

16   the Court may recall in connection with Mr. Ujaama delivering

17   6000 pounds to someone purported in Afghanistan.  That fell

18   apart not long after 9/11.  And by the time that amendment to

19   the supervised release statue took effect --

20           THE COURT:  November?

21           MR. CRONAN:  October 26, 2001 Mr. Ujaama's conduct had

22   ended.  The best recollection from talking to the prior

23   prosecutor as to the December 01 date well, first is that it

24   reflected Abassi's arrest.  And second, no one had even

25   contemplated or thought about the supervised release

1  implications.

2          So one of the reasons why we're on the same page as
3  Mr. Oftenbecher is that there was not any criminal conduct that
4  occurred after the amendment to the supervised release statute.
5  Therefore, we think both as a matter of the Court's discretion
6  and fairness and possibly even an Apprendi issue, the lower
7  statutory maximum of three years is what should be the maximum
8  allowed here.

9          And I think Mr. Oftenbecher is correct that it's more
10 than just not imposing now more than three years.  I'm not sure
11 this is unlike a situation where the defendant may plead to a
12 drug conspiracy that originally charges a B1A weight and then
13 later the government agrees that it's a B1B weight.  I'm not
14 sure it's that different than that sort of scenario especially
15 where here the proof just wouldn't allow for any conduct that
16 occurred after the amendment took effect.

17         THE COURT:  All right.  Well, that's useful.  Let me
18 just kick the tires of this.  Because while I'd read things I
19 just want to make sure that I know precisely what I'm doing
20 because I would be tying somebody's hands in the future and I
21 would imagine it would not be my hands because he'll be
22 supervised for whatever period of time in another district.  I
23 think it appeared that his educational plans and other plans
24 elsewhere and is where he's been living so far and elsewhere.
25 So, let me kick the tires of this and I will issue an order.

1    Our sentencing is next Friday.  You'll have something, a short
2    order before that time.  If that's what's necessary you'll know
3    one way or the other whether or not you are going to receive
4    it.  All right?
5            MR. OFTENBECHER:  And for me, was just the authority
6    real quick with respect to the timing of motion.
7            THE COURT:  I take it oral motion right now.  You've
8    got the motion.  I think it is your motion is reserved.  I've
9    accepted it as an oral motion.  Let's just pose it this way.
10   To withdraw the plea if necessary for purposes of preserving
11   this issue and therefore if it was necessary to preserve the
12   issue by withdrawing the plea it would be manifestly unjust if
13   I didn't go ahead and do that and deny the motion for some
14   other reason.  So I take it as an oral motion right now.  I
15   would appreciate the case or two you've got just so -- I don't
16   need Apprendi but just you say you've got something that says
17   I've got to decide on before sentencing and you're pretty clear
18   on that and that would be useful to know.
19           MR. OFTENBECHER:  Thank you.
20           THE COURT:  Let me say this.  Also, I think a
21   submission that we had received from probation, I'm not sure
22   why they separated it into two because I've looked at one that
23   they separated out and haven't given you yet, Mr. Oftenbecher,
24   and it's certainly has a lot less information than the other
25   one but I don't see any reason why Mr. Oftenbecher shouldn't

| | |
|---|---|
| | FAGAAUJAC                          Conference |

1     have it.
2             MR. CRONAN:  Your Honor, to be frank, this is the
3     first time I've heard of two separate submissions coming in
4     when Mr. Oftenbecher mentioned it to me.  So, no, we have no
5     objection.
6             THE COURT:  I think you'll be as surprised as I was
7     when look into the second submission.
8             Mr. Oftenbecher, you may certainly have access to it.
9     There's nothing in that there that in any way, shape or form
10    shouldn't be something that you shouldn't see.  Off course you
11    have to see the absolutely everything that I'm going to be
12    looking at for purposes of sentencing your client.
13            MR. OFTENBECHER:  Should I get that from the Court
14    then?
15            THE COURT:  Joe will send it to you.
16            Thank you.  We are adjourned.
17                            (Adjourned)